**Jacqueline B. BRUNEAU**

v.

**FEDERAL DEPOSIT INSURANCE CORP. as Receiver for Bankers Trust, N.A., et al.**

**Civ. A. No. 89–5195.**

United States District Court,
E.D. Louisiana.

Feb. 21, 1992.

Robert Souren Abdalian, Robert S. Abdalian, New Orleans, La., for plaintiff.

James Alcee Brown, Edward J. Gay, III, Shannon Skelton Holtzman, Liskow & Lewis, Walter C. Thompson, Jr., Charles Michael Pisano, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Stephen Winthrop Rider, McGlinchey, Stafford, Cellini & Lang, John Gregory Odom, Thomas J. Cortazzo, Lamothe, Hamilton & Odom, Eric Oliver Person, New Orleans, La., for defendants.

## ORDER AND REASONS

ARCENEAUX, District Judge.

A motion for summary judgment on behalf of the Federal Deposit Insurance Corporation, as Receiver of Bankers Trust of Louisiana, N.A. (the "Receiver") (Doc. 51), and a motion for summary judgment on behalf of Bob A. Hardesty, Raymond A. Lapine, Sr., Myron E. Moorehead, and Robert L. Karem[1] (the "Directors") (Doc. 41) were filed and taken on the papers. Having reviewed the pleadings, affidavits, documents and the applicable law, the Court finds merit in the Receiver's motion and

dismisses the remaining claims for lack of subject matter jurisdiction.

### FACTS

Prior to March 10, 1989, Bankers Trust of Louisiana, N.A. was a national banking association organized and existing under the laws of the United States. 12 U.S.C. § 21 *et seq.* The affairs of Bankers Trust were subject to the supervision and control of the Comptroller of the Currency (the "Comptroller"), an agency of the Treasury Department of the United States. (Uncontested Fact No. 1).

On or about December 5, 1988, the plaintiff, Jacqueline B. Bruneau ("Bruneau") read an advertisement placed by Bankers Trust in the *Times Picayune* of New Orleans setting forth the interest rate on Bankers Trust's Certificates of Deposit. The advertisement also represented that Bankers Trust was insured by the Federal Deposit Insurance Corporation (the "FDIC"). Relying on the fact that Bankers Trust's advertised rates were "good" and that it was insured by the FDIC, she decided to deposit $223,125.76 with the bank. (Uncontested Fact No. 2).

Moreover, Bruneau contends that Juanita Barbaro, an employee of Bankers Trust, informed her that each separate certificate of deposit would be insured for $100,000.00, that she relied on the representation of Ms. Barbaro, that on December 5, 1988, she deposited her funds in three separate "CDs" under three names: (No. 13209, Jacqueline Bruneau, $100,000.00; No. 13208, Jacqueline B. Bruneau, $100,000.00; No. 13310, Jacqueline Blancq Bruneau, $23,125.67) believing that each would be fully insured and believing that the Bankers Trust was solvent. For purposes of this motion, the Receiver for Bankers Trust does not contest these contentions. Accordingly, for purposes of the FDIC motion only, the Court will accept these allegations as true.

At the close of business on March 10, 1989, the Comptroller declared Bankers

---

**1.** Robert Karem's name was inadvertently left out of a motion to dismiss filed on behalf of Hardesty, Lapino and Moorehead. (Doc. 41).

Counsel filed and adopted that motion on behalf of Karem by motion. (Doc. 50).

Trust to be insolvent pursuant to 12 U.S.C. § 191 and terminated its existence as a national banking association. The Comptroller subsequently appointed the FDIC as Receiver for Bankers Trust pursuant to 12 U.S.C. §§ 191, 1821(c), whereupon the FDIC assumed the duties of Receiver and took possession and control of the assets, the property and the affairs of Bankers Trust. (Uncontested Fact No. 3).

FDIC records show that Bankers Trust had 138 uninsured deposit accounts as of March 10, 1989. Of these deposits, 125 were held in certificates of deposit. (Uncontested Fact No. 4).

Following the closure of Bankers Trust, Bruneau filed a claim with the FDIC for the recovery of her deposits. The FDIC paid Bruneau the sum of $100,000.00 (that insured portion of her deposit) and issued her a Receiver's Certificate for $123,437.53 (the remaining amount) entitling Bruneau to share pro rata with other uninsured depositors and general creditors of Bankers Trust. (Uncontested Fact No. 5).

Bruneau has received a number of dividend payments. They are as follows:

| | |
|---|---|
| March 8, 1990 | $49,375.01 |
| February 11, 1991 | $ 7,159.37 |
| May 31, 1991 | $ 2,172.50 |
| June 13, 1991 | $ 419.69 |
| July 29, 1991 | $ 691.25 |

The first check may have been endorsed under protest with a reservation of rights. There was also a payment in August, however, the Court has not been apprised of its amount. As a result of these payments, Bruneau has received at least $59,817.82 of her $123,437.53 claim. (Uncontested Fact No. 7).

Advertisements placed by Bankers Trust in the *Times Picayune* were not recorded in the official records of Bankers Trust. (Uncontested Fact No. 8).

## RECEIVER'S MOTION

The Court will first address the Receiver's motion and its theories. Receiver contends that the *D'Oench, Duhme* doctrine[2] and its statutory counterpart[3] bar plaintiff's suit. Receiver also argues that plaintiff's "constructive trust" theory should not be recognized because, *inter alia*, it reflects neither current nor Louisiana law and is inconsistent with the statutory scheme controlling recovery of an unsecured claim with respect to the Receiver. Finally, because plaintiff has accepted the distributions, she has waived her claims and they are rendered moot. The Court will address the constructive trust theory first.

### Constructive Trusts and Downriver

Plaintiff's claim against the FDIC as Receiver rests on her allegations (1) that an employee officer of Bankers Trust told Ms. Bruneau that each of her certificates of deposit would be insured for $100,000.00 by the FDIC, (2) that she relied on this misrepresentation, (3) that she further relied on an implicit misrepresentation that Bankers Trust was solvent, (4) that because these two statements were fraudulent, that a debtor/creditor relationship was not created. Rather, plaintiff argues that as a result of this "fraud", a constructive trust was created on Ms. Bruneau's behalf. Plaintiff cites to *Richardson v. New Orleans Debenture Redemption Co.*, 102 F. 780 (5th Cir.1900) in support of this proposition.

Plaintiff contends that this trust would place her claim beyond the statutory and regulatory framework delineated by Congress for the pro rata distribution of assets to uninsured depositors as delineated by the National Bank Act, 12 U.S.C. § 21 *et seq.*, the Federal Deposit Insurance Act, 12 U.S.C. § 1811 *et seq.*, and the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") in 12 U.S.C. §§ 1821, 1823.

This concept was specifically rejected by the United States Court of Appeals for the Tenth Circuit in *Downriver Community Fed. Credit Union v. Penn Square Bank*, 879 F.2d 754 (10th Cir.1989), *cert. denied*, 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d

---

**2.** *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

**3.** 12 U.S.C. § 1823(e).

1019 (1990), and frankly, this Court is perplexed by plaintiff's reliance on dicta in a case which specifically rejects plaintiff's contentions.

The Tenth Circuit refused to graft onto the National Bank Act Oklahoma's statute providing for a constructive trust "because to do so would permit a constructive trust in favor of plaintiffs in contravention of the principles implicit in the National Bank Act." That court specifically found that because the FDIC, as the receiver of a national bank, was a party to the suit, under 12 U.S.C. § 1819(b)(2)(A), all claims against the receiver's estate were governed by federal law. It refused to look to Oklahoma law because it would defeat the National Bank Act's "system of equal distribution." As the court stated:

> Here, we must utilize governing principles that are in conformity with the policies underlying the National Bank Act. Most important to this case are the policies of achieving the "equity of equality among creditors," and of the orderly liquidation of the receiver's estate, that are implicit in 12 U.S.C. §§ 91, 194.

*Downriver*, 879 F.2d at 761 (citations omitted).

In *Downriver*, plaintiffs had specifically relied on financial statements that contained material misrepresentations which management and directors knew were false or misleading with respect to the insolvent institution, Penn Square Bank. Plaintiffs claimed that under the constructive trust theory, their deposits should be returned. However, the Court rejected these claims and underscored that such a recovery violates both of the federal policies (equality among creditors and orderly liquidation of estate) implicit in the National Bank Act. *Id.* at 763.

■ Likewise, in this instance, the Court will not use the constructive trust theory to improve Bruneau's position. In order to recognize a constructive trust, the analysis begins at the inception of the deposit.

Plaintiff's theory is that because of the fraud, there really is no deposit, and the money is held in a constructive trust.[4] Since one looks at that point in time, state law controls the analysis. *Downriver*, 879 F.2d at 758. However, under Louisiana law, constructive trusts are not recognized. *In re Emerald Oil Co.*, 807 F.2d 1234, 1238 (5th Cir.1987); *In re Latham Exploration Co.*, 83 B.R. 423, 426–27 (W.D.La.1988); *Prudential Ins. Co. of America v. Harris*, 748 F.Supp. 445, 448 (M.D.La.1990). Thus, there is no state law which this Court could look to create such a remedy.

■ Furthermore, the federal interest in maintaining the orderly distribution of the receivership estate overrides the interests of an individual depositor such as the plaintiff. The Court will not endeavor to eviscerate the statutory scheme which Congress has so carefully devised. Under 12 U.S.C. § 1821(i), FIRREA specifically states:

> Notwithstanding any other provision of Federal law of the law of any State ..., this subsection shall govern the rights of the creditors (other than insured depositors) of such institution.

As stated by Congressman Wylie, Ranking Minority Member of the House Banking Committee in discussing the provision of § 1821(i):

> Title II includes a provision codifying the FDIC's current practice, which has been upheld by the courts, with respect to the valuation of claims against financial institutions in default. This provision embodies the very simple and straightforward principle that creditors of an insolvent institution are entitled to only their pro rata share of the value of a failed institution's assets.

135 Cong.Rec. H4975 (daily ed. August 3, 1989). Based on this analysis, plaintiff's claim against the FDIC is without merit. Even if this were not the case, under *D'Oench, Duhme* and section 1823(e) of

---

**4.** This theory presents somewhat of a puzzlement, since, of course, if there was no deposit, then there was no FDIC insurance applicable to plaintiff's accounts. The FDIC insurance applies only to deposits. The Court notes this conundrum, but proceeds nonetheless with its analysis of plaintiff's theory.

Title 12 of the United States Code, these claims are barred.

## D'OENCH, DUHME AND SECTION 1823(e)

█ The linchpin of plaintiff's suit is the fact that an oral representation or agreement was made between Bankers Trust and Ms. Bruneau. She agreed to deposit her funds based on Bankers Trust's assurance that each certificate of deposit was insured by the FDIC which was in direct contravention of the FDIC regulations.[5]

In order for plaintiff to maintain this action against the FDIC, the agreement in question must meet the requirements of 12 U.S.C. § 1823(e).[6] *See* 12 U.S.C. § 1821(d)(9). None of these provisions are met. Since the "agreement" was not signed by plaintiff and Bankers Trust, approved by Bankers Trust's board of directors, and made an official record of the bank, it fails to meet any of § 1823(e)'s requirements. *Carico v. First National Bank of Bogata,* 734 F.Supp. 768, 770 (E.D.Tex.1990). Therefore, § 1823(e) bars the enforcement of any "agreement" based on Bankers Trust's representations.

Plaintiff contends that this statute has never been used to deny a depositor's claims and should not be so employed by this Court. However, the Court recognizes that this statute has been used in numerous situations, other than the failed bank/borrower litigation which was its genesis. It has been applied to insurance policies, *FDIC v. Gulf Life Ins. Co.,* 737 F.2d 1513 (11th Cir.1984); to executive compensation plans, *Belsky v. First National Life Ins. Co.,* 653 F.Supp. 80 (D.Neb.1986); to loan participation agreements, *FDIC v. Merchants National Bank,* 725 F.2d 634 (11th Cir.1984), among many agreements.

As was recently stated by the United States Court of Appeals for the Fifth Circuit, citing to *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987):

"[o]ne purpose of 1823(e) is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. Often such an evaluation must be done literally overnight. For this reason the Supreme Court has been unwilling "to engraft an equitable exception upon the plain terms of the statute." Though they deny it, this is exactly what the defendants have asked us to do. We too must decline the request and hew closely to the "plain terms of the statute."

*Resolution Trust Corp. v. McCrory,* 951 F.2d 68, 72 (5th Cir.1992) (citations omitted). Likewise, this Court will decline the same invitation.

Based on the foregoing, the Court finds sufficient reason to dismiss this claim with prejudice without the need to address any of the copious other arguments raised by either party.

## PLAINTIFF'S PENDENT STATE LAW CLAIMS

█ Having dismissed the FDIC from this matter, the Court reviews the remaining parties and claims. The following persons remain as defendants: Robert Karem, Raymond Lapino, Virginia Martinez, Bob Hardesty, Juanita Barbaro, and Myron

---

5. *See* 12 C.F.R. § 330.5. "Funds owned by a natural person and deposited in one or more deposit accounts in his or her own name shall be added together and insured up to $100,000 in the aggregate."

6. 12 U.S.C. § 1823(e) provides:
No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
(1) is in writing,
(2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
(3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(4) has been, continuously, from the time of its execution, an official record of the depository institution.

Moorehead. Based upon the representations made in the amended complaint (Doc. 5), each of these individuals resides in the Eastern District of Louisiana as does the plaintiff. Therefore, there exists no basis for diversity jurisdiction. Unless, the remaining claims sound in federal law, the Court is without jurisdiction.

The remaining claims are for "intentional misrepresentation" (First Claim), "negligent misrepresentation" (Second Claim), "breach of fiduciary duty" (Fourth Claim), "violation of Louisiana Revised Statutes" (Fifth Claim), "concerted tort action" (Sixth Claim). Each is based on Louisiana law, albeit as to the fifth claim, some of the defendants have filed a motion based on preemption of state law.

Nonetheless, the Court is without subject matter jurisdiction and declines to exercise pendent jurisdiction over the remaining claims.[7] To do so would not dispose of the entire matter, and it is in the interest of judicial economy that the remaining issues be dealt with in their totality.

 When federal law claims in an action based on federal question jurisdiction are eliminated and only state law claims remain, the federal court should not continue to exercise jurisdiction. Federal courts may relinquish jurisdiction by either dismissing the case without prejudice or in cases that have been removed, by remanding the case to state court. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). The United States Supreme Court in *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), stated:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state law claims should be dismissed as well.

This case was filed in federal court; thus the Court cannot remand a case that was not initially removed. Accordingly,

IT IS ORDERED that the FDIC's motion for summary judgment is GRANTED and plaintiff's claims against the FDIC as Receiver are DISMISSED with prejudice.

IT IS FURTHER ORDERED that plaintiff's remaining claims are DISMISSED without prejudice.

---

**7.** Furthermore, since this civil action was commenced prior to December 1, 1990, supplemental jurisdiction authorized under 28 U.S.C. § 1367 is unavailable.