SISTERS OF THE PRESENTATION OF THE BLESSED VIRGIN MARY OF ABERDEEN, SOUTH DAKOTA, Petitioner,

v.

NATIONAL CREDIT UNION ADMINISTRATION BOARD, Respondent.

No. 91–1516.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1991.

Decided April 8, 1992.

Gerald P. Laughlin, Omaha Neb., argued (David A. Karnes, Richard E. Putnam, Omaha, Neb., and Donald Bierle, Yankton, S.D., on the brief), for petitioner.

Anthony J. Steinmeyer, Washington, D.C., argued (Stuart M. Gerson and Thomas M. Bondy, on brief), for respondent.

Before WOLLMAN, Circuit Judge, and BRIGHT and ROSS, Senior Circuit Judges.

ROSS, Senior Circuit Judge.

This appeal is brought by the Sisters of the Presentation of the Blessed Virgin Mary of Aberdeen, South Dakota (Petitioner) from a decision of the National Credit Union Administration Board (the Board) denying Petitioner's status and claims as a creditor of the Franklin Community Federal Credit Union (Franklin) of Omaha, Nebraska. In November 1988, Franklin was placed into involuntary liquidation by the National Credit Union Administration

(NCUA). At that time, the Petitioner held share certificates in Franklin amounting to $2.45 million dollars. The Board rejected the Petitioner's argument that it should be treated as a creditor for purposes of the priority payout schedule and instead ruled that it was a "member to the extent of uninsured shares." We affirm the Board's decision.

## I.

The Federal Credit Union Act, 12 U.S.C. §§ 1751 *et seq.*, provides for the chartering and incorporation of federal credit unions, which are defined as cooperative associations organized in accordance with the provisions of the Act for the purpose of promoting thrift and creating a source of credit for provident or productive purposes within the community. *Id.* at § 1752(1). Federal credit unions must be established to serve a particular defined group having a common bond of occupation or association, or a group within a well-defined neighborhood, community or rural district. *Id.* at § 1759. The Act also establishes a program of federal credit union share insurance, pursuant to which each member account is insured up to $100,000. *Id.* at §§ 1781(a), 1787(k)(1).

The Act designates the NCUA as the agency with responsibility and authority for administering its provisions, including its insurance program. *See generally id.* at §§ 1752a(a), 1781(a), 1782(a), 1783(a). The Act provides that the NCUA shall be managed by the National Credit Union Administration Board, *id.* at § 1752a(a), which shall possess the authority to promulgate "rules and regulations for the administration of this chapter," *id.* at § 1766(a), and shall have broad powers to oversee and supervise the operations of the federal credit unions. *See, e.g., id.* at §§ 1766,

1784. As part of its statutory duties, the Board has adopted the following Priority Schedule to be used whenever a federal credit union is involuntarily liquidated:

a. Secured creditors to the value of their collateral;

b. Costs and expenses of liquidation;

c. Wages due employees of the Federal Credit Union;

d. Costs and expenses incurred by creditors in successfully opposing release of the Federal Credit Union from certain debts;

e. Taxes legally due and owing to the United States or any state or subdivision thereof;

f. Debts due and owing to the United States, including the NCUA;

g. General creditors and secured creditors to the extent that their claims exceed their security interest; and

h. Members to the extent of uninsured shares and the National Credit Union Insurance Fund.

51 Fed.Reg. 43,383 (1986).[1]

The Franklin Community Federal Credit Union was chartered as a federal credit union in 1968 under the Federal Credit Union Act, and was established to serve the community of North Omaha in Omaha, Nebraska. Franklin was designated as a "credit union serving predominantly low-income members" within the meaning of the Federal Credit Union Act, 12 U.S.C. § 1757(6), as a consequence of which it was legally eligible to receive deposits from nonmembers, such as charitable and religious organizations, in order to increase the deposit base in a limited income credit union.

Capitalizing upon its "low income" status, Franklin solicited funds from charitable and religious organizations nationwide,

---

1. We note that subsequent to the events occurring herein, the National Credit Union Administration promulgated new regulations governing the involuntary liquidation of federal credit unions. Effective November 7, 1991, the regulatory provision entitled "Payout priorities in involuntary liquidation," deletes the former reference to "members," and instead provides that for purposes of payout priorities upon involuntary liquidation, *"[s]hareholders* to the extent of

their respective uninsured shares and the National Credit Union Share Insurance Fund to the extent of its payment of share insurance" have equal priority with respect to each other, and have lower priority than either secured or general creditors. 56 Fed.Reg. 56,926 (1991) (to be codified at 12 C.F.R. § 709.5(b)(6)) (emphasis added). We do not rely to any extent upon this change in the regulations for the basis of our decision herein.

representing that shares in Franklin not only would constitute a sound investment, but also would contribute to Franklin's stated aim of using its funds to help the disadvantaged community that it was established to serve.

Over a period of years, a variety of charitable and religious organizations, and other groups, including local governmental units, purchased millions of dollars in share certificates in the Franklin Credit Union. Some of these entities, including Petitioner, obtained shares in excess of applicable insurance limits, apparently, in some cases, on the basis of assurances by Franklin officials that their shares were safe because they were "collateralized by government securities."

Eventually it was discovered that Franklin's share certificate operation was a fraud. Money expended by charitable, religious, and other organizations in consideration for Franklin share certificates was not being used for legitimate purposes, but instead was being siphoned off for the personal and other improper use by certain individual Franklin officers and employees. In November 1988, the NCUA, acting pursuant to its statutory authority, placed Franklin into involuntary liquidation and appointed itself Liquidating Agent, on the ground that the credit union was insolvent.

The Petitioner asserts that it did not seek out Franklin as a depository for its funds, but instead was solicited as a nonmember to place large sums of money in Franklin. For several years, the Petitioner transferred money to Franklin, receiving in each instance a letter from a representative of Franklin indicating that the funds had been received, that a certificate had been issued, and that such deposits were collateralized by United States government securities. The Petitioner claims that it was confident that its money was secure, notwithstanding the $100,000 limit of insurance, because of the collateralization by government securities. Only after the collapse of Franklin did the Petitioner learn that the statements concerning the collateralization were false.[2]

In December 1988, following the commencement of the liquidation proceedings, the Petitioner submitted an administrative claim for federal credit union share insurance. The NCUA determined that the certificates were insured by the National Credit Union Share Insurance Fund up to a total of $341,883.02, leaving an uninsured amount of $2,114,596.44. In conjunction with the written receipt of that determination by the NCUA, the Petitioner also received a certificate issued by the NCUA which indicated that the Petitioner was the holder of a claim equalling the uninsured amount.

The Petitioner contends that as a result of Franklin's representations that its deposits were collateralized, it should be considered a secured creditor entitled to first priority under category (a) of the Priority Schedule. The Petitioner argues that each letter from Franklin, signed by credit union officials, indicating that the Petitioner's deposit was secured by United States government securities, was sufficient evidence of a security agreement. The Petitioner further contends that even if its interest is not deemed "secured," its claim falls under category (g) as a general creditor.

It has been the Petitioner's consistent position that it is entitled to priority over members of Franklin and the NCUA, and that there are or should be funds available to pay the Petitioner its entire loss as a "creditor" of Franklin in accordance with the Priority Schedule. In the alternative, the Petitioner argues that even if it is not a "creditor," it is entitled to a priority preference by virtue of equitable constructive trust principles.

On March 8, 1990, the Liquidating Agent rejected the Petitioner's claim for "creditor" status and found instead that the Petitioner was to be treated as a "member" of Franklin because its deposits were insured. On January 17, 1991, the Board upheld the decision of the Liquidating Agent, finding

---

**2.** At no time did the Petitioner receive copies of the government securities allegedly collateralizing the certificates or any other document identifying these securities or confirming their existence, other than the letters from Franklin.

that the Petitioner was a "member to the extent of uninsured shares" within the meaning of the payout priority schedule.

## II.

■ The Board's conclusion that Petitioner is a "member" of the credit union for purposes of the payout schedule rested in part on its determination that Petitioner is an insured shareholder whose share certificates constitute "member accounts." The language of the statute associates "insured accounts" with "members" in a variety of sections. For example, "the term 'insured account' means the total amount of the account *in the member's name* (after deducting offsets) less any part thereof which is in excess of $100,000." 12 U.S.C. § 1787(k)(1) (emphasis added). The statute also directs that, "in determining the amount [of insurance] due *to any member,* there shall be added together all accounts in the credit union maintained by him for his own benefit either in his own name or in the names of others." *Id.* (emphasis added). Similarly, section 1781(a) states that the NCUA "shall insure the *member* accounts of all Federal credit unions." (Emphasis added).

It is undisputed that the Petitioner's share certificates in Franklin gave rise to an "insured account" within the meaning of the statute. This is evidenced by the fact that the Petitioner applied for such insurance and received an insurance payout of about $350,000. The NCUA therefore contends, and the Board found, that because it is undisputed that the Petitioner held insured share certificates, which thereby constituted a "member account," it necessarily follows that the Petitioner is in this sense a "member." Because the Petitioner held shares that were insured in part but not in full, it follows that the Petitioner is a "member to the extent of uninsured shares," which falls within category (h) of the NCUA's Priority Schedule.

The only provision defining the term "member" appears in 12 C.F.R. § 745, and supports a finding that members and nonmembers are to be treated identically for purposes of classification and treatment of an account. Section 745.1(b) provides in part, "[t]he terms *member* or *members* as used in this part mean those persons enumerated in the credit union's field of membership ... includ[ing] those nonmembers permitted under the Act to maintain accounts in an insured credit union." (Emphasis in original).

The definition of "member account" similarly equates members and nonmembers for purposes of classification and treatment of an account:

[A] share, share certificate, or share draft account account [sic] of a member of a credit union ... and, in the case of a credit union serving predominantly low-income members (as defined by the Board), such terms (when referring to the account of a nonmember served by such credit union) mean a share, share certificate, or share draft account account [sic] of such nonmember which is of a type approved by the Board and evidences money or its equivalent received or held by such credit union in the usual course of business and for which it has given or is obligated to give credit to the account of such nonmember....

12 U.S.C. § 1752(5). Section 1752(5) includes nonmember share certificate accounts in low-income credit unions in its definition of "member account." Therefore, such insured nonmembers are treated as "members" of the credit union for purposes of classification and treatment of their accounts.

We reject Petitioner's claim that it is a "creditor" of Franklin for the simple reason that the express terms of the Act provide that the Petitioner's shares constitute equity and not debt. The statute provides that where a federal credit union issues share certificates to a person or organization within or without its field of membership, those share certificates "represent[ ] equity." 12 U.S.C. § 1757(6). Therefore, it is clear from the terms of the statute that the Petitioner is an equity holder of Franklin, and not a creditor.

We also reject the Petitioner's argument that it cannot be a "member" because it is in fact a "nonmember" within the meaning

of 12 U.S.C. § 1757(6). Section 1757(6) provides that where, as here, a federal credit union is designated by the NCUA as a "credit union serving predominantly low-income members," the credit union may issue share certificates not only to the persons or entities within its limited field of membership, but also to "nonmembers," such as charitable or religious organizations. The Petitioner correctly asserts that it is a "nonmember" within the meaning of this provision. As a nonmember, the Petitioner had no right to subscribe to shares of stock or to be elected to the membership. 12 U.S.C. § 1759. Further, the Petitioner was not entitled to vote, obtain loans or hold office in the credit union. *Id.* at §§ 1757(7), 1759, 1760.

It is clear that for purposes of its participation in, and governance of, the various credit union activities, the Petitioner was a nonmember that did not share many of the rights and benefits otherwise enjoyed by credit union "members." It does not follow, however, that the Petitioner is separate and distinct from "members" in all respects. In fact, the Petitioner, although a "nonmember" as defined by section 1757(6), was treated as a "member" with regard to the classification of its account, most notably with respect to the payment of insurance upon liquidation. It necessarily follows that for purposes of classification and treatment of the Petitioner's account, the Petitioner was treated as a "member" of the credit union. That classification and treatment of Petitioner's account logically extends not only to the payment of insurance upon the involuntary liquidation of the credit union, but also to the disbursement of the credit union's assets upon liquidation.

We simply cannot overlook the inconsistency in treating the Petitioner as a "member" of Franklin, thereby entitling it to the same insurance benefits as that enjoyed only by holders of "member accounts" and at the same time conferring upon the Petitioner priority creditor status to the detriment of all other insured accountholders whose accounts exceeded the insured limit. By applying for and accepting the insurance available for member accounts, the

Petitioner impliedly agreed that its account was a member account and that it was to be treated as a member of Franklin for purposes of classification and treatment of its account. We conclude that the Petitioner was a "member to the extent of uninsured shares" for purposes of distribution under the priority schedule. Any other interpretation would be contrary to the Act and regulations and would result in a grossly inequitable distribution of the liquidation proceeds, at the expense of some of the other accountholders.

### III.

■ We also reject Petitioner's argument that it is entitled to the imposition of a constructive trust placed on the assets available at the time Franklin closed. The Petitioner asserts that equity dictates that a constructive trust is appropriate because it was induced by fraud to purchase share certificates in Franklin and because the NCUA was negligent in performing its duty to discover that fraud. Further, it asserts that it suffered harm unique from other depositors in that Franklin's fraud harmed the Petitioner to a much greater extent than any other depositor, simply by virtue of the amount of its loss.

■ We find Petitioner's argument to be without merit. First, it has been held that the regulatory activities of a government agency do not give rise to a duty to discover and report possible fraud or wrongdoing. *See, e.g., North Dakota v. Merchants Nat'l Bank & Trust Co.*, 634 F.2d 368, 379 n. 20 (8th Cir.1980) (en banc) (in regulating banks pursuant to the National Bank Act, the Comptroller of the Currency has no duty to a bank or its shareholders). The NCUA was under no duty to discover or warn Franklin shareholders of fraudulent activities, and the Petitioner has no equitable claim based on regulatory negligence.

Second, the Petitioner fails to establish that it was the only accountholder of the credit union that was fraudulently induced to purchase share certificates in excess of applicable insurance coverage. Nor did Pe-

titioner suffer a fraud unique from other accountholders by Franklin's assurances that its certificates would be collateralized by government securities. The record establishes that at least one other accountholder, the Benedictine Sisters of the Annunciation, received similar assurances.

Finally, there is no equitable basis for the Petitioner's argument that it deserves priority over other accountholders because it stands to suffer the most substantial loss. We simply can find no basis in equity for giving the Petitioner a disproportionate advantage over other Franklin shareholders who also suffered losses.

### IV.

Based on the foregoing, we conclude that the Petitioner was properly classified as a member to the extent of its uninsured shares and that it is not entitled to the imposition of a constructive trust in its favor. Accordingly, the judgment of the National Credit Union Board is affirmed.