UNITED STATES of America

v.

**BCCI HOLDINGS (LUXEMBOURG), S.A., Bank of Credit and Commerce International, S.A., Bank of Credit and Commerce International (Overseas) Limited, International Credit and Investment Company (Overseas) Limited, Defendants.**

Cr. No. 91–0655 (JHG).

United States District Court, District of Columbia.

Aug. 19, 1993.

Stefan D. Cassella, Lloyd H. Randolph, Paul M. Herrup, U.S. Dept. of Justice, Washington, DC, for U.S.

*ORDER GRANTING GOVERNMENT'S MOTIONS TO DISMISS PETITIONS FILED BY BRANCHES OF DEFENDANT BCCI (OVERSEAS) LIMITED AND DENYING MOTIONS TO DISMISS PETITIONS FILED BY THE GOVERNMENT OF THE PEOPLE'S REPUBLIC OF BANGLADESH AND BANGLADESH BANK*

JOYCE HENS GREEN, District Judge.

Presently pending are the United States' motions to dismiss the petitions for hearings to adjudicate interests in forfeited property filed by **The Central Bank of Paraguay** ("Paraguayan branch"), **Raymond Davies on behalf of all BCCI depositors in Sierra Leone** ("Davies"), **Carlos F. Sanchez Fabrega as Liquidator of BCCI (Overseas) Limited (en Liquidacion) in Panama** [1] ("Panamanian branch"), **Andre Forde and Michel Chavaux, Administrators of BCCI (Overseas) Limited in France and Monaco** ("French branch"), **The Government of the People's Republic of Bangladesh and Ban-**

---

1. Mr. Fabrega was subsequently replaced by Edgardo Sigfredo Lasso Valdes as the liquidator of the Panamanian branch.

gladesh Bank [2] ("Bangladesh"), **Hussein Abdel Rahim *et al.*, Joint Official Liquidators for BCCI (Overseas) Limited, Sudan** ("Sudanese branch"), **Antonio dos Santos Ramos and Antonio Maria Ho as the Liquidation Commission for BCCI (Overseas) Limited, Macau Branch** [3] ("Macanese branch"), and **Abdullah Soydas, as Liquidator of BCCI (Overseas) Limited, Istanbul, Izmir and Mersin, Turkey** ("Turkish branch").[4] Upon consideration of the motions to dismiss, all filings relating thereto, and oral argument presented at the June 22 and 23, 1993 hearings, the motions to dismiss the petitions filed by branches of BCCI (Overseas) Limited are granted and the motions to dismiss the petitions filed by Bangladesh are denied.

## BACKGROUND

On July 5, 1991, bank regulators in the principal jurisdictions in which the four corporate defendants [5] were organized or did business jointly instituted a worldwide shutdown of the banks upon the belief that they were insolvent and had engaged in numerous criminal activities. Subsequently, courts in the respective domiciles of the defendants appointed liquidators to collect all BCCI assets located throughout the world and to distribute the assets to lawful creditors and depositors of BCCI on a global basis.

On January 24, 1992, this Court, following findings of fact and conclusions of law with supporting reasons made in open court, accepted the pleas of guilty of made by the court-appointed liquidators on behalf of the BCCI entities and the plea agreement between them and the United States of America. Thereupon, and in accordance with 18 U.S.C. § 1963, an Order of Forfeiture was entered. Paragraph 1(e) of the Order provides that the corporate defendants named in this action shall forfeit to the United States ownership interests in all property located in the United States, including, without limitation, real property and all tangible and intangible personal property, however held, whether subsequently identified, determined or discovered in the course of the ongoing liquidation proceedings described therein or otherwise identified, determined, or discovered in any manner at any time, but not property that may be brought into the United States by or on behalf of court-appointed fiduciaries of BCCI in the course of the management or disbursement of the liquidation estates as described in the plea agreement. Attached to the January 24, 1992 Order as Exhibit A was a list of specific BCCI accounts, with corresponding numbers, names, and approximate balances, which the United States Marshals Service was directed to seize forthwith. Because the government was unable to verify certain information concerning additional forfeitable accounts at the time the Order of Forfeiture was entered, the Court issued a supplemental Order on January 31, 1992 which directed immediate seizure of the specific assets listed therein. In accordance with the plea agreement, approximately half of the forfeited funds will be placed in a Worldwide Victims and Creditors Compensation Fund maintained by the court-appointed liquidators of the corporate defen-

---

**2.** Because Bangladesh Bank asserts interests in forfeited property as an agent of the Government of the People's Republic of Bangladesh, those two petitioners will be treated as one entity for the purpose of resolving the government's motions to dismiss.

**3.** Dr. Ramos and Mr. Ho were subsequently replaced by Antonio Correia.

**4.** Although the government filed a motion to dismiss the petition filed by the State Bank of India on behalf of the Bombay branch of BCCI (Overseas), resolution of the motion has been temporarily stayed at the request of the petitioner in light of ongoing settlement attempts. *See* June 18, 1993 Order Granting Request for Adjourn-

ment; July 20, 1993 Order Granting Further Adjournment. A petition filed by another branch of BCCI (Overseas), the Jamaican branch, was voluntarily withdrawn in June 1993.

**5.** The four corporate defendants are BCCI Holdings (Luxembourg), S.A., incorporated under the laws of Luxembourg; Bank of Credit and Commerce International, S.A., incorporated under the laws of Luxembourg; Bank of Credit and Commerce International (Overseas) Limited ("BCCI Overseas") incorporated under the laws of the Cayman Islands; and International Credit and Investment Company (Overseas) Limited, incorporated under the laws of the Cayman Islands. The four entities are collectively referred to as "BCCI."

dants. The remaining half will be used by the United States to reimburse federal banking agencies' insurance funds and to minimize the risk of loss arising from BCCI's illegal acquisitions of certain United States banks.

In satisfaction of 18 U.S.C. § 1963(*l*)(1), and to inform third parties of potential rights to seek recovery of assets declared forfeited, the United States published notice of the Order of Forfeiture, as amended, during the period between February 13, 1992 and March 27, 1992 in eleven major United States newspapers including the *Wall Street Journal*, the *New York Times*, the *Chicago Tribune*, and the *Los Angeles Daily Journal. See* Government's Compliance with Order of May 8, 1992, filed May 12, 1992. In addition, personal notice was sent to over 340 persons and entities as late as April 3, 1992. *Id.*

On March 19, 1992, the French, Panamanian, and Paraguayan branches of BCCI Overseas filed separate petitions seeking the return of funds forfeited from accounts held in their names at institutions in New York. Although all three concede that they were not separately incorporated, they claim to be separate juridical entities under the laws of their domiciles. Accordingly, the branches argue that they are third parties to this litigation, that they are not bound by the plea agreement entered by their parent, and that funds held in their name were not owned by BCCI Overseas and cannot be forfeited absent specific proof tracing the assets to illegal activities. The Macanese, Sudanese, and Turkish branches filed similar petitions on April 12, 1992, May 11, 1992, and June 10, 1992 respectively.

Unlike the above-mentioned petitions, the April 27, 1992 and April 3, 1992 claims of Raymond Davies and Bangladesh were not filed on behalf of branches of BCCI Overseas; Davies' petition was filed on behalf of all depositors of the Sierra Leonean branch and Bangladesh's petition was submitted on behalf of the sovereign nation itself. Bangladesh seeks to recover the funds held in branch accounts based on allegations that it had the right to hold all foreign exchange acquired by the branches, that the branches could not dispose of foreign exchange without its express permission, and that the branches have not received such permission with respect to the forfeited assets.

In accordance with a briefing schedule set by the Court, the government filed motions to dismiss the petitions based on theories that as mere branches of one of the corporate defendants, none of the claimants had standing to appear before this Court and that none of the petitioners could satisfy the substantive prerequisites for court-ordered relief. Additionally, the government contended that the Paraguayan branch's petition was defective because it sought to recover an interest in assets which were not yet seized. The government further contended that no petition filed by a liquidator, including the claim filed by Mr. Davies, could assert derivative claims of depositors and that the petitions of the Sudanese and Turkish branches were filed out of time.

On June 24, 1992, the government filed a Motion to Amend Order of Forfeiture to Include Additional Property, seeking forfeiture and seizure of assets in newly discovered bank accounts held in the names of the corporate defendants, proceeds from the sale of a condominium purchased with resources provided by a corporate defendant, money remaining in a "BCCI Legal Fund" established by one of the corporate defendants for the defense of its employees' legal interests, a bankruptcy distribution to one of the corporate defendants, and assets held at various New York financial institutions in the name of ICIC Investments Ltd., a sibling corporation of defendant ICIC (Overseas) Ltd. The Court granted the government's motion and issued an Order of Forfeiture on July 29, 1992. The United States subsequently provided notice of the Order to potential claimants.[6]

In response to the July 1992 Order of Forfeiture, Bangladesh filed a second petition asserting interests in newly forfeited and seized property held in the names of Bangladesh branches of BCCI Overseas. The government subsequently filed a motion to dismiss Bangladesh's new petition, which be-

---

6. Over 100 petitions to amend the two Orders of Forfeiture have been filed as of this date.

came ripe on June 18, 1993. Although the new Order of Forfeiture also directed the seizure of property held in the name of the Paraguayan branch, that branch failed to file a second petition in response to the Order and apparently believed that its first petition sufficiently raised a claim to those assets.

Hearings on the government's motions to dismiss what the government termed the "branch petitions" were scheduled in a May 12, 1993 Order which provided, "The litigants shall be prepared to present both legal arguments and relevant factual evidence, including testimony and/or documentation relating to the nature of the relationship between the petitioners and Bank of Credit and Commerce International (Overseas) Limited." Five days later, the government filed a motion *in limine* seeking an Order excluding the presentation of, *inter alia,* factual evidence and testimony of foreign law. The government claimed that such evidence and testimony were irrelevant to resolution of the motions to dismiss. After considering oppositions filed by some of the petitioners, the government's motion *in limine* was granted. The Court, however, warned, "In the event that the legal arguments contained in the government's motions to dismiss are rejected, additional hearings will be scheduled and the petitioners will be allowed to present relevant evidence in support of their claims." May 27, 1993 Order Modifying May 12, 1993 Order Setting Hearings on "Branch" Petitions at 3.

All petitioners were invited, though not required, to participate in oral argument scheduled for June 21, 22, and 23, 1992. All petitioners addressed herein except for the French and Turkish branches accepted the invitation.

## DISCUSSION

 Title 18, United States Code, § 1963 sets forth an orderly procedure by which third parties seeking to recover interests in forfeited property may obtain judicial

resolution of their claims. The provision granting standing to parties seeking to amend an order of forfeiture to exclude certain property states:

> Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice ..., whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property.

18 U.S.C. § 1963($l$)(2). Section 1963($1$)(6) sets forth the substantive elements which a third party must establish to successfully obtain amendment of an order of forfeiture and provides in full:

> If, after the hearing, the court determines that the petitioner has established by a preponderance of the evidence that—
>
> (A) the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
> (B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section;
>
> the court shall amend the order of forfeiture in accordance with its determination.[7]

Only by establishing standing and satisfaction of all requisite elements of either § 1963($l$)(6)(A) or (B) may a party obtain judicial relief from an order of forfeiture. *See United States v. Schwimmer,* 968 F.2d 1570, 1584 (2d Cir.1992) ("The *only* role of the District Court is to amend the order of

---

**7.** Title 18 U.S.C. § 1963($l$)(6) contains exactly the same language as 21 U.S.C. § 853(n)(6), the statute providing for forfeiture in criminal narcotics cases, and it appears that no court has interpreted these two provisions differently. Be-

cause the two subsections are identical and because of the relative dearth of caselaw interpreting and applying § 1963($l$), the Court's opinion relies on reasoning contained in § 853(n) cases as well as in § 1963($l$) cases.

forfeiture where a genuine property interest of the sort specified in § 1963(*l*)(6) is demonstrated.") (emphasis in the original); *United States v. Lavin*, 942 F.2d 177, 187 (3d Cir. 1991) ("Those third parties who fall outside of the [limited avenues of relief], regardless of how sympathetic they are, must petition the Attorney General for relief.") If a third party fails to allege in its petition all elements necessary for recovery, including those relating to standing, the court may dismiss the petition without providing a hearing. *See United States v. Campos*, 859 F.2d 1233, 1240 (6th Cir.1988); *United States v. Mageean*, 649 F.Supp. 820, 825 (D.Nev.1986), *aff'd without opinion*, 822 F.2d 62 (9th Cir. 1987); S.Rep. No. 225, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Ad. News 3374, 3391.

▇▇▇ In its motions to dismiss the branch petitions, the government argues, *inter alia*, that because branches of BCCI Overseas are not separately incorporated, they cannot, as a matter of federal law, be considered separate juridical entities. Consequently, the government contends, the branches must be declared "defendants" within the meaning of § 1963(*l*)(2) and are therefore barred from asserting interests in property ordered forfeited. Most of the petitioners assert that foreign law, rather than federal common law, should govern whether they are separate entities and claim that under the laws of their domiciles, they maintain existences wholly separate from BCCI Overseas. In the alternative, the petitioners argue that under accepted principles of federal and state common law, whether a branch of a bank is an entity separate from its parent is a complex question of fact which can only be resolved after the presentation of evidence relating to numerous factors. Bangladesh and Davies argue that issues relating to the status of bank branches are irrelevant to resolution of their petitions since they claim interests as a sovereign nation and a representative of general depositors and creditors rather than as branches of BCCI Overseas.

Because the meaning of a term contained in a federal criminal statute is at issue, and because Congress has not expressed an unambiguous intent to the contrary, federal common law, rather than the law of the foreign countries in which the branches are domiciled, will govern whether the petitioners are "defendants" for purposes of determining whether they have standing to file petitions. *See Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 2154, 109 L.Ed.2d 607 (1990) (state definitions of "burglary" should not control whether a federal sentencing enhancement provision should apply); *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 119–20, 103 S.Ct. 986, 995, 74 L.Ed.2d 845 (1983) ("application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control"); *United States v. Turley*, 352 U.S. 407, 411, 77 S.Ct. 397, 399, 1 L.Ed.2d 430 (1957) ("[I]n the absence of a plain indication of an intent to incorporate diverse state laws into a federal criminal statute, the meaning of the federal statute should not be dependent on state law.").

Under federal common law, whether a bank branch should be treated as an independent entity and whether that question is a matter of fact or law depends upon the context of the litigation in which the issues arise. For example, in actions involving two different branches of the same parent, courts have held that the branches can be considered entities independent of each other for specific purposes. *See, e.g., Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50, 53–54 (2d Cir.1965) ("[A] warrant of foreign attachment, served on a branch office located in the Eastern District of New York, is ineffective to garnishee a bank account at a branch office of the same bank located in the Southern District of New York."); *United States v. Harvey*, 1989 W.L. 109079 (S.D.Fla.) (whether Miami agency of BCCI should be considered separate from Panamanian branch of BCCI for purposes of enforcing tax levy was an issue of fact which prevented resolution of the dispute on summary judgment); *McGrath v. Agency of Chartered Bank of India, Australia & China*, 104 F.Supp. 964 (S.D.N.Y.1952) (New York and German branches considered different entities for purposes of determining whether set-off was available), *aff'd without opinion*, 201 F.2d 368 (2d Cir.1953); *Clinton Trust Co. v. Compania Azucarera Central Mabay S.A.,*

172 Misc. 148, 14 N.Y.S.2d 743 (Sup.Ct. N.Y.Cty.1939) (accounts deposited in a branch in Cuba could not be considered to be property situated with a branch located in New York). More significant to this litigation, however, are the cases involving disputes over the legal relationship between a branch and its parent. The substantial majority of those cases hold that though a parent may be able contractually to shield itself from certain debt obligations incurred by its branches, branches are not entities separate from their parents. *See, e.g., Trinh v. Citibank, N.A.,* 850 F.2d 1164, 1168 (6th Cir. 1988) ("[I]t is a general banking principle that the home office is *ultimately liable* on a deposit placed in its foreign branch if, as here, the branch closes or otherwise wrongfully refuses to return a deposit.") (emphasis in original), *cert. denied,* 496 U.S. 912, 110 S.Ct. 2602, 110 L.Ed.2d 282 (1990); *Edelmann v. Chase Manhattan Bank, N.A.,* 861 F.2d 1291, 1304 (2d Cir.1988) ("When a branch is closed, the depositor has a claim against the parent bank; the situs of the debt represented by the deposit 'springs back' to the home office. Ultimate liability for the debt of a branch rests upon the parent bank."); *Vishipco Line v. Chase Manhattan Bank, N.A.,* 660 F.2d 854, 863 (2d Cir.1981) ("By operating in Saigon through a branch *rather than through a separate corporate entity,* Chase accepted the risk that it would be liable elsewhere for obligations incurred by its branch.") (emphasis added), *cert. denied,* 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982). These cases rely in substantial part on the landmark case of *Sokoloff v. National City Bank of New York,* 130 Misc. 66, 224 N.Y.S. 102, 114 (Sup.Ct.N.Y.Cty.1927), *aff'd without opinion,* 223 A.D. 754, 227 N.Y.S. 907 (N.Y.App.Div.1928), *aff'd,* 250 N.Y. 69, 164 N.E. 745 (1928), which held:

> Where a bank maintains branches, each branch becomes a separate business entity, with separate books of account. A depositor in one branch cannot issue checks or

drafts upon another branch or demand payment from such other branch, and in many other respects the branches are considered separate corporate entities and as distinct *from one another* as any other bank. *Nevertheless, when considered with relation to the parent bank, they are not independent agencies;* they are, what their name imports, merely branches, and are subject to the supervision and control of the parent bank, and are instrumentalities whereby the parent bank carries on its business, ... and their property and assets belong to the parent bank, although nominally held in the names of the particular branches. *Ultimate liability for a debt of a branch would rest upon the parent bank.*

(emphasis added and citations omitted).[8] Given that the issue currently facing this Court involves relationships between branches and their parent rather than relationships between the branches themselves, it is appropriate to conclude, based on *Sokoloff* and its progeny, that branches of BCCI Overseas are part of that "defendant" as a matter of law and that the branches therefore do not have standing under § 1963(*l*)(2).

Lending strong support to this determination are analogous cases which hold that unincorporated divisions of a parent corporation cannot be indicted or sued. *See United States v. ITT Blackburn Co., a Div. of ITT,* 824 F.2d 628, 631–32 (8th Cir.1987) (acknowledging that "an unincorporated division cannot be sued or indicted, as it is not a legal entity," and recognizing that "when a corporation is properly made a party to litigation, then any unincorporated division may also be liable"); *Western Beef, Inc. v. Compton Inv. Co.,* 611 F.2d 587, 590 (5th Cir.1980) (unincorporated division "not a separate legal entity wholly apart from its owner"); *In re Sugar Industry Antitrust Litigation,* 579 F.2d 13, 18 (3d Cir.1978) ("A division of a corporation is not a separate entity but is the corpo-

---

**8.** Although BCCI Overseas was not chartered by this country, it is worth noting that United States chartered banks and their branches have been declared to be single entities under the Federal Foreign Banking Law, codified at 12 U.S.C. §§ 601 *et seq. See, e.g., First Nat'l Bank of Bos-* *ton (International) v. Banco Nacional de Cuba,* 658 F.2d 895, 900 (2d Cir.1981) ("[F]ederal law regards a national bank and its branches as a single entity."), *cert. denied,* 459 U.S. 1091, 103 S.Ct. 579, 74 L.Ed.2d 939 (1982).

ration itself."); *Salzstein v. Bekins Van Lines, Inc.,* 747 F.Supp. 1281, 1282 n. 1 (N.D.Ill.1990) ("[B]y definition a corporate division is not a separate legal entity and hence is not suable...."). Because unincorporated divisions and their parents cannot be considered separate entities for the purpose of indictment, it would be anomalous to consider them separate entities for the purpose of determining standing to file a petition pursuant to § 1963(*l*).[9]

■ Although the Davies petition was filed on behalf of depositors of the Sierra Leonean branch rather than on behalf of the branch itself, the petition is defective because general depositors, as unsecured creditors of a defendant, cannot assert valid claims to forfeited funds.[10] Simply put, unsecured creditors like the Sierra Leonean depositors cannot assert interests "in property which has been ordered forfeited" as required by § 1963(*l*)(2), cannot claim interests in property that "[were] vested in the petitioner rather than the defendant or [were] superior to any right, title, or interest of the defendant" as required by § 1963(*l*)(6)(A), and cannot be considered "bona fide purchaser[s] for value of the right[s], title[s], or interest[s] in the property" as required by § 1963(*l*)(6)(B). *See* Order Dismissing the August 21, 1992 Petition of Anton Seravaseiyar, the August 25, 1992 Petition of Ahmed Shahriar, the June 22, 1992 Petition of Aqueel Ahmed Siddiqi, and the September 8, 1992 Petition of Margaret Mary White, *United States v. BCCI Holdings (Luxembourg), S.A.,* 814 F.Supp. 106 (D.D.C.1993); Order Addressing the Government's Motion to Dismiss Petitions of Depositors and Additional Depositors, *United States v. BCCI Holdings (Luxembourg), S.A.,* 814 F.Supp. 106 (D.D.C. 1993).

■ Notwithstanding the fact that this Court has previously held that interests arising from constructive trusts may be recognized under § 1963(*l*), it is inappropriate to impose such a trust in favor of the Sierra Leonean depositors. One of the most significant motivating factors behind the Court's approval of the plea agreement between the United States and BCCI was the fact that the agreement provided for the creation of a worldwide victims fund so that "innocent victims of BCCI's wrongdoing can recover at least a portion of lost assets in as fair a manner as possible—equitable, orderly, and expeditious." Transcript of Plea Acceptance and Sentence, January 24, 1992, at 6. The Court expressly recognized, "Because the fund will be administered on a global scale through unified proceedings, piecemeal and unfair distribution can be avoided." *Id.* Imposition of a constructive trust in favor of the Sierra Leonean depositors or any other group of depositors could cause disruption of the global liquidation proceedings currently underway. Besides the practical consideration relating to the difficulties of adjudicating whether each of the more than 4,500 depositors can establish that they made deposits and that such deposits were forfeited by this Court, imposing a trust would significantly harm the abilities of other BCCI creditors to recover fair portions of lost funds. Consequently, and in accordance with the rationales of *Sisters of the Presentation of the Blessed Virgin Mary of Aberdeen, South Dakota v. Nat'l Credit Union,* 961 F.2d 733 (8th Cir.1992); *Downriver Community Fed. Credit Union v. Penn Square Bank,* 879 F.2d 754 (10th Cir.1989), *cert. denied,* 493 U.S. 1070, 110 S.Ct. 1112, 107 L.Ed.2d 1019 (1990); and *Bruneau v. Fed. Deposit Ins. Corp.,* 785 F.Supp. 585 (E.D.La.), *aff'd,* 981 F.2d 175 (5th Cir.1992), a constructive trust in favor of the depositors will not be imposed. Davies' petition is therefore dismissed.

■ As a sovereign nation, Bangladesh cannot be considered part of BCCI Overseas, and the United States' argument that the petitioner does not have standing because it is a "defendant" within the meaning of

---

9. Because of the dismissal of the branch petitions for lack of standing it is unnecessary to address the government's other asserted bases for dismissal, including Paraguay's failure to file a petition responsive to the July 29, 1993 Order of Forfeiture.

10. In light of the conclusion that depositors cannot successfully seek amendment of an order of forfeiture, it is unnecessary to resolve the government's assertion that Davies cannot file claims on behalf of others asserting rights, titles, or interests in forfeited property.

§ 1963($l$)(2) is therefore rejected. Besides raising the standing issue, however, the government has also contended that the petitions of Bangladesh should be dismissed because it cannot establish rights, titles, or interests in the Bangladeshi branch accounts of BCCI Overseas which were "vested in the petitioner rather than the defendant or [were] superior to any right, title, or interest of the defendant" as required by § 1963($l$)(6)(A).

In its motions to dismiss and at oral argument, the government conceded that state law, rather than federal law, determines whether a petitioner has a superior or vested legal right, title, or interest in forfeited property as required by § 1963($l$)(6)(A). United States' Motion to Dismiss the L Claims of BCCI(O)'s Foreign Branches, filed May 1, 1992, at 19–20; Transcript of June 22, 1993 hearing at 17. In addition, the government and Bangladesh agree that the law of the locality with the strongest interest in the litigation should be applied to determine the validity of the petitioners' asserted property interests. The Court concurs. *See In re Koreag, Controle et Revision, S.A.*, 961 F.2d 341, 350 (2d Cir.1992) ("The federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation."); *Wells Fargo Asia Ltd. v. Citibank, N.A.*, 936 F.2d 723, 726 (2d Cir. 1991) (same), *cert. denied,* —— U.S. ——, 112 S.Ct. 2990, 120 L.Ed.2d 868 (1992). The parties disagree, however, as to whether the law of the state of New York or of Bangladesh should apply.

Upon careful consideration of the interests of both jurisdictions, it is concluded that Bangladeshi law should apply to determine the validity of the petitioners' asserted property interests. At this stage of the litigation, the main issue to be resolved hinges on the relationship between the government of Bangladesh and Bangladeshi branches of a bank incorporated under the laws of the Cayman Islands. Based on this fact alone, Bangladesh clearly has a much stronger interest in the application of its law, notwithstanding the

fact that the funds in dispute were once located in New York.[11]

Because the Court previously denied Bangladesh the opportunity to present relevant expert testimony regarding foreign law at oral argument, and because its petitions have survived the government's threshold contentions relating to standing, principles of fairness dictate that it be allowed to present such testimony at a hearing. Accordingly, the government's motions to dismiss Bangladesh's petitions are denied, and a brief hearing on the validity and sufficiency of the petitioner's asserted interests will be held in accordance with § 1963($l$)(5). Bangladesh and the United States will be allowed to present evidence and witnesses, including experts on Bangladeshi law, in support of their cases and may cross-examine witnesses presented by the opposing side.

### CONCLUSION

For reasons stated above, it is hereby

ORDERED that the petitions filed by the following claimants on the following dates are dismissed:

**The Central Bank of Paraguay,** filed March 19, 1992;

**Raymond Davies on behalf of all BCCI depositors in Sierra Leone,** filed April 27, 1992;

**Carlos F. Sanchez Fabrega as Liquidator of BCCI (Overseas) Limited (en Liquidacion) in Panama,** filed March 19, 1992;

**Andre Forde and Michel Chavaux, Administrators of BCCI (Overseas) Limited in France and Monaco,** filed March 19, 1992;

**Hussein Abdel Rahim,** *et al.,* **Joint Official Liquidators for BCCI (Overseas) Limited, Sudan,** filed May 11, 1992;

**Antonio dos Santos Ramos and Antonio Maria Ho as the Liquidation Commission for BCCI (Overseas) Limited, Macau,** filed April 12, 1992; and

**Abdullah Soydas, as Liquidator of BCCI (Overseas) Limited, Istanbul, Izmir and Mersin, Turkey,** filed June 10, 1992.

---

**11.** In light of the Orders directing the United States Marshals to seize the funds at issue, it is unlikely that the assets are presently located in New York.

It is FURTHER ORDERED that the United States' motions to dismiss the April 3, 1992 and September 4, 1992 petitions of the **Government of the People's Republic of Bangladesh and Bangladesh Bank** are denied. After conferring with each other, counsel for the United States and Bangladesh shall file, on or before September 10, 1993, a joint submission advising the Court of the number and identity of the witnesses each side intends to call at the final hearing and briefly summarizing the anticipated testimony of each witness. The joint submission shall also estimate the amount of time each side believes necessary to fairly *but concisely* present its position at the hearing. Upon receipt of the joint submission, the Court will schedule a hearing date.

IT IS SO ORDERED.